IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 07-cv-00933-WDM-CBS

NILY LIAV,

      Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,

      Defendant.

---

## ORDER ON MOTION FOR SUMMARY JUDGMENT

---

Miller, J.

      This matter is before me on the Motion for Summary Judgment filed by

Defendant International Business Machines Corporation ("IBM") (doc no 56).  I have

reviewed the parties' written arguments and find oral argument is not required.  For the

reasons that follow, the motion will be granted.

<u>Background</u>[1]

      This is an employment discrimination case pursuant to the Age Discrimination in

Employment Act, 29 U.S.C. § 623(a)(1) ("ADEA").  Plaintiff's employment with IBM was

terminated during a reduction in force ("RIF") in her work group.  Plaintiff alleges that

she was selected for the RIF because of her age, which was 66 at the time of the RIF.

      Plaintiff was hired at IBM in 1995.  In 1996 she began working as a database

administrator ("DBA") assigned to perform services to Xcel Energy ("Xcel") pursuant to a

---

[1]The facts set forth here are taken from the parties' briefs and exhibits and are
undisputed unless otherwise noted.

contract between IBM and Xcel. IBM uses full time employees, independent contractors, and employees of IBM India Ltd. to provide services on the Xcel account. IBM uses the term "band level" to describe an employee's skill and level of responsibility; the higher the band level, the more skill and responsibility of the employee. In 2005, IBM's DBA group contained employees in Bands Seven to Nine; Plaintiff was a Band Seven DBA from 1996 until her discharge from IBM in 2005.

In early 2005, Xcel had completed a merger and found that it had more information technology ("IT") workers than it needed. It sought assistance from its IT partners, including IBM, to help reduce IT costs. This effort was referred to as the "Expense Challenge." To implement the Expense Challenge, IBM's Project Executive, Julie Romero, directed her senior managers to find ways to cut costs. The senior manager in charge of the DBA Group was Julie Reed. Senior managers were not told how to cut costs but rather were to exercise discretion.

Reed decided her first step was to determine what skill sets were needed in order to continue to service Xcel's applications with fewer people. She asked the business manager of the DBA Group, Robin Younkman, to evaluate the DBA Group members based on their skill sets. The only limitation Younkman was given was that he should not consider employees of IBM India Ltd., who were the least expensive members of the DBA Group. Younkman then turned to Gary Jacobson, a team leader, to create a skill assessment rating of the group. Younkman added a further limitation on the assessment, however, by requesting that Jacobson only evaluate DBAs working on Oracle systems. Oracle DBAs were the largest subgroup and consumed the majority of Xcel's budget; DBAs working on the other system, SQL Servers, were fewer in number

and could not absorb further reductions.

Jacobson created a list of nine skills that were the primary day-to-day functions of a DBA. He then rated the Oracle DBAs, including Plaintiff, on a scale from one to five for each skill. Jacobson based this evaluation on his experience and knowledge of the employees, documentation, and feedback from other team members. He also interviewed the group's customers for an assessment of the DBA's abilities. It is undisputed, however, that no truly objective measures were used for the assessment. Younkman and Jacobson then reviewed the ratings together and came to a consensus on how each member of the group was to be evaluated. They then provided the ratings to Reed.

According to the Expense Challenge assessment, Plaintiff and P.P., one other female Oracle DBA, then aged 42, were the lowest rated of the group. Reed decided that these two employees should be removed from the Xcel account.[2] Reed passed this recommendation along to Romero.

However, around the same time, Romero learned that IBM intended to implement a "Resource Action," IBM's term for a RIF, in the service group that included the DBA Group. The RIF would affect only IBM employees, not contractors or employees of IBM India. IBM has a set procedure for implementing RIFs called the "Staff Reduction Selection Process." This methodology requires the decisionmaker to create a job group and identify 3-5 relevant skills in order of importance, then to perform a skill assessment of the job group using the identified skills, then to assess the job

---

[2]It appears that this does not necessarily mean that they would be discharged from IBM.

performance review trend of the members of the job group (i.e., improving, declining, or same), then to determine surplus employees based on a total assessment of the performance and relevant skills of the members of the job group. Finally, the decisionmaker would write a narrative regarding employees selected for the RIF.

IBM determined that Plaintiff and P.P. would most likely be the employees selected for the RIF but nonetheless went through the Staff Reduction Selection Process. It created a job group of all Band Seven DBAs (of whom there were four) and identified the five most relevant skills for the job group. The members of the job group were evaluated and assessed; again, Plaintiff and P.P. received the lowest overall evaluation and were selected for the RIF. Plaintiff was notified of this decision on May 31, 2005. She was offered the opportunity to apply for other jobs within IBM but was not successful in obtaining another position. Accordingly, she was discharged from IBM, with severance benefits, on June 30, 2005.

After exhausting her administrative remedies, Plaintiff filed her complaint in this matter alleging a single claim of age discrimination.

<u>Standard of Review</u>

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v.*

*Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).  Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Id.*

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  A plaintiff alleging employment discrimination may prove intentional discrimination by direct or indirect evidence.  In the absence of direct evidence, the analysis set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-804 (1973), provides the framework for assessing indirect, or circumstantial, evidence.  *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000); *see also Cortez v. Wal-Mart Stores, Inc.,* 460 F.3d 1268, 1273 (10th Cir. 2006) (burden-shifting approach used in disparate treatment claims under the ADEA).

Under this analysis, the plaintiff bears the initial burden of presenting a *prima facie* case of discrimination.  *Kendrick*, 220 F.3d at 1226.  The essential purpose of the *prima facie* test is to eliminate "the most common nondiscriminatory reasons for the plaintiff's rejection."  *Id.* at 1227 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)).  *See also St. Mary's Honor Center*, 509 U.S. at 506 (*prima facie* case "in effect creates a presumption that the employer unlawfully discriminated against the employee") (quoting *Burdine*, 450 U.S. at 254) (alteration in quoted material).  If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action.  *Kendrick*, 220 F.3d at 1226 (quoting *McDonnell Douglas*, 411 U.S. at 802).  If the defendant presents such a reason, the plaintiff

bears the "ultimate burden" of establishing that these proffered reasons are a pretext for unlawful discrimination. *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1167 (10th Cir. 2000). The plaintiff must show pretext by demonstrating that the defendant was more likely motivated by a discriminatory reason or that the defendant's proffered reason "is unworthy of credence." *Id.* (quotation omitted). *See also Kendrick*, 220 F.3d at 1230 (three ways of showing pretext are: (1) evidence that the defendant's stated reason for the adverse action was false; (2) evidence that the defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or practice when making the adverse decision). In the case of a RIF, a plaintiff may show pretext by presenting evidence that his or her termination does not accord with the criteria allegedly used to select those in the RIF, by showing that the evaluation under the RIF criteria was deliberately falsified or manipulated to effect the plaintiff's termination, or by producing evidence that the RIF was generally pretextual. *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1168 (10th Cir. 1998).

Discussion

Plaintiff admitted in her deposition that none of the decisionmakers made comments or otherwise took any action that she considered to be indicative of age discrimination during the time she was employed at IBM. Because there is no direct evidence of discrimination, I evaluate Plaintiff's claim using the burden-shifting approach set forth in *McDonnell Douglas*. For the purposes of the motion for summary judgment, IBM does not dispute that Plaintiff could establish a *prima facie* case of age discrimination with respect to the RIF.

IBM contends that it has offered a legitimate, non-discriminatory reason for selecting

Plaintiff for the RIF, specifically that she was evaluated by her supervisors as being less skilled than the others in the subgroup.  In her deposition testimony, Plaintiff conceded that Younkman and Jacobson were qualified to evaluate Plaintiff's skills.  IBM asserts that Plaintiff cannot carry her burden to demonstrate that IBM's reason was a pretext for unlawful discrimination and so summary judgment should enter in its favor.

In response, Plaintiff first argues that pretext is shown by the "inconsistent" skills lists.  Plaintiff contends that the number of skills goes from nine to fourteen and then to five.  However, this does not demonstrate inconsistency or pretext.  It is undisputed that Younkman and Jacobson were given no framework for determining what skills criteria to use for the Expense Challenge; Plaintiff does not dispute that the nine identified skills were important.  The list of fourteen skills was, according to the evidence presented, a further list made by Younkman for his own purposes after he thought of additional important skills for the job; there is no evidence that it was used in the RIF.  The reason that five skills were identified for the RIF is because this is what was required by the Staff Reduction Selection Process.  It appears that the criteria for the RIF were in line with IBM's standard procedure; the fact that different or additional criteria were used for an unrelated action does not support an inference of pretext, particularly since Plaintiff was rated as having lower skills in both cases.  Similarly, Plaintiff contends inconsistency is shown because a rating system of 1-5 was used for the Expense Challenge, but ratings of high, medium, low (as required by Staff Reduction Selection Process) were used for the RIF.  Plaintiff offers no explanation for how this could have skewed the results or demonstrated any inconsistency between her ratings on the two different systems.  As noted, that IBM used different skills assessments at different times for different purposes does not demonstrate that IBM has been

inconsistent in its reason for the RIF decision.

Plaintiff also contends that one step of the RIF procedure, determining whether an employee's performance trend was improving or declining, was "botched." However, the evidence does not bear this out. Plaintiff produced copies of drafts in which some of Plaintiff's performance scores were in error, but the final version has the correct performance scores for Plaintiff.[3] Accordingly, there is no evidence of error in this step of the evaluation.

Plaintiff also argues that pretext is established because IBM used primarily subjective evaluation criteria to make the decision. Plaintiff is correct that the use of subjective criteria can create an opportunity for unlawful discrimination, but there is no evidence that this occurred here. The skills identified by the decisionmaker for the RIF included technical database management skills, ability to work in a team, ability to develop and support applications, communication skills, and resourcefulness in problem solving. Plaintiff was rated as having medium technical and communication skills and lower interpersonal and adaptability skills. Plaintiff has offered no evidence to indicate that the criteria were invalid or that Jacobson or Younkman did not in good faith believe their assessment of Plaintiff's skills.[4] This, and not whether the criteria were subjective, is the

---

[3]It does appear there was an error with P.P.'s evaluation in that her performance trend was listed as "same" when it appears to have been improving.

[4]Plaintiff asserts that IBM should have given more weight to experience and training in developing its assessments, but this is precisely the type of business decision that courts should not second-guess. Similarly, Plaintiff does not offer any evidence to show that the two Band Seven employees who were retained should not have been or were not qualified, other than implying that because they were young or were new hires that they could not be as skilled as Plaintiff.

key issue.  Under well-established Tenth Circuit law, the court does not examine whether IBM's analysis of Plaintiff's abilities was "wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs."  *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir. 1999), *abrogated on other grounds by Morgan*, 536 U.S. at 114.  Plaintiff's cited case, *Garrett v. Hewlett Packard Co.*, 305 F.3d 1210 (10th Cir. 2002), does not persuade me otherwise.  *Garrett* involved a plaintiff whose rankings and evaluations dropped precipitously after he began taking a high profile role in diversity issues at the company; under those circumstances, the court concluded that the lack of objective criteria supported the plaintiff's pretext argument.  In addition, the ranking system in *Garrett* involved a best to worst ranking of employees with no criteria for making the judgments, as opposed to the specific and defined criteria that applied to all employees here.  *Garrett* does not stand for the proposition that an employer's use of subjective criteria is *per se* evidence of pretext, as Plaintiff appears to argue.

It appears that the supervisors' evaluation of Plaintiff's non-technical skills were supported by Plaintiff's teammates.  Specifically, Plaintiff refers to emails[5] from coworkers containing the following characterizations of her: Liav was uninvolved, unmoving out of her comfort zone, overly reliant on the help of others, negative, hindering progress, confrontational, frustrating, failing to take responsibility, failing to learn and implement new skills, overly complaining, panicky when presented with a new task, slow to learn, lacking in confidence, and not a self-starter.  Given this kind of feedback, it does not appear that

_____

[5]These emails were not provided to the court.  Exhibit 14 to Plaintiff's response brief purports to contain these emails, but the court's ECF system has only a duplicate copy of Plaintiff's Exhibit 15 in the file.

the decisionmakers' assessment of Plaintiff's non-technical skills was used to disguise a discriminatory motive.

I also reject Plaintiff's argument that these emails demonstrate that Jacobson, Younkman, and Plaintiff's coworkers harbored ageist attitudes. There is nothing in these negative comments that indicate these were unfair characterizations based on the coworkers' stereotyped or discriminatory view of older persons but rather on legitimate work-related complaints. Plaintiff also argues that these coworkers could have provided this kind of feedback because they were concerned about their own jobs; however, there is no evidence that Plaintiff's coworkers were aware of the impending RIF at the time.

I agree with Plaintiff that there is some evidence that the decisionmakers had already decided that Plaintiff and P.P. were the most likely candidates for the RIF and the Staff Reduction Selection Process could have been somewhat *pro forma* as a result. It did, however, include the evaluation of two other individuals in the group. Moreover, given that the reason for this preselection was that the two had already been evaluated as the lowest skilled persons on the team for the Expense Challenge, no reasonable jury could find that the preselection was a pretext for unlawful discrimination since there is simply no evidence that the assessment was not in good faith. Moreover, I note that in the group that Plaintiff contends should have been the subgroup for the RIF evaluations, the ages of the individuals who were not laid off in the RIF[6] were as follows: 36, 54, 45, 44, 36, 44, 31, 45, 54, and 59. Although Plaintiff was older, P.P., the other employee selected for the RIF,

_____

[6]Plaintiff fails to explain whether these individuals were full-time employees, contractors, or employees of IBM India, or whether they were Band Seven, Band Eight, or Band Nine level.

10

was 42 and younger than seven of the DBAs who were kept on the team (and who are also in Plaintiff's protected category of persons over 40). Thus, the process criticized by Plaintiff resulted in the retention of many employees who were older than the other person selected for the RIF. A plaintiff "can not pick and choose a person [he] perceives is a valid comparator who was allegedly treated more favorably, and completely ignore a significant group of comparators who were treated equally or less favorably than [he]." *English v. Colo. Dept. of Corrections,* 248 F.3d 1002, 1012 (10th Cir. 2001) (quoting *Simpson v. Kay Jewelers*, 142 F.3d 639, 646-47 (3rd Cir.1998)).

This is not a case where an employee previously received strong and favorable evaluations but then suddenly was rated less favorably. Rather, it appears that Plaintiff stayed in the same band level for nearly ten years, meaning that her skills and responsibilities never advanced to the next level. The evidence on the record shows that her evaluations were more or less the same in the three years prior to the layoff, in that she received overall ratings of 2, 3, and 2+ [out of a scale of 1-4, with 1 being the best]. Thus, the assessments from her coworkers and supervisors appear to be consistent with the other evidence on the record.

Finally, Plaintiff makes a conclusory argument that the selection of the work group for the RIF was intentionally skewed to eliminate younger DBAs. Plaintiff does not explain how the work group should have been composed or how this would have changed the result. Moreover, it appears that the selection of the group was in keeping with the Staff Reduction Selection Process, which permits but does not require combining band levels in a job group. Plaintiff's primary objection appears to be that all band levels should have been considered for the layoff. However, given that the higher band employees were more

skilled and had more responsibilities than Plaintiff, there is no evidence that including them would have resulted in a different RIF decision. Moreover, again, since those surviving the RIF included numerous employees older than P.P., albeit younger than Plaintiff, I still fail to see how a reasonable jury could conclude that the selection process was manipulated to get rid of older workers. Plaintiff's unsupported argument is insufficient to create an issue of fact in this regard. *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings. To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.") (citations omitted).

I conclude that Plaintiff cannot, as a matter of law, carry her burden to show that IBM's reason for selecting her for the RIF was a pretext for unlawful discrimination. Summary judgment therefore should enter in IBM's favor.

Accordingly, it is ordered:

1. Motion for Summary Judgment filed by Defendant International Business Machines Corporation (doc no 56) is granted. Judgment shall enter in favor of Defendant and against Plaintiff.

2. Defendant may have its costs.

DATED at Denver, Colorado, on October 14, 2008.

BY THE COURT:


s/ Walker D. Miller
United States District Judge